STATE OF MISSOURI, Respondent, v. W. A. (STIFF) WRIGHT, Appellant.

Kansas City Court of Appeals, February 19, 1912.

1. **LOCAL OPTION: Intoxicating Liquor.** Defendant was indicted for selling a pint of whiskey to a negro in the city of Fulton where the Local Option Law had been adopted. The evidence of the state is held to be sufficient to sustain a verdict of guilty.

2. ————: ————: **Indictment.** The omission in an indictment to refer to the latest revision of the statutes cannot be regarded as a failure to charge an offense against the law.

3. ————: ————: ————. The endorsement and signature of the foreman of grand jury need not appear at the end of each count of an indictment.

4. **JURY: Remarks of Court: Change of Venue.** Where an application is made for a change of venue in good faith and for an honest purpose, it is prejudicial error for the judge, in granting the change of venue, to severely criticise the defendant in the presence of the jurors who were to try him.

Appeal from Callaway Circuit Court. —*Hon. John A. Rich*, Judge.

REVERSED AND REMANDED.

*D. W. Herring* and *Clarence A. Barnes* for appellant.

*J. R. Baker* for respondent.

JOHNSON, J.—Defendant was indicted, tried and convicted for the offense of selling intoxicating liquor in violation of the Local Option Law. The indictment

returned by a special grand jury of Callaway county and filed with the clerk of the circuit court, July 21, 1910, contains six counts, four of which were dismissed before the submission of the case. The jury found the defendant guilty on one of the remaining counts and not guilty on the other. The punishment was assessed in the verdict at a fine of eight hundred dollars and imprisonment of eight months in the county jail. Defendant appealed.

The count of the indictment on which the verdict of guilty was returned is as follows: ."The grand jurors for the State of Missouri, duly summoned from the body of the county of Callaway and State of Missouri, having been duly empanelled, charged and sworn to inquire within and for the body of the county of Callaway and State of Missouri, upon their oaths do present and charge that on the 26th day of August, 1907, the act of the Legislature of the State of Missouri, approved April 5, 1887, now article 3 of chapter 22 of the Revised Statutes of the State of Missouri for the year 1899, known as the Local Option Law was duly adopted in the city of Fulton, county of Callaway and State of Missouri; that afterwards, to-wit, on or about the 26th day of November, 1909, and within one year next before the finding of this indictment, and when the said law was in full force and effect in the said city of Fulton, county of Callaway and State of Missouri, one W. A. (Stiff) Wright, at the said city of Fulton, county and State aforesaid, did then and there unlawfully sell to one Prince Walker, intoxicating liquor and a beverage containing alcohol, to-wit, one pint of whiskey, for the price and sum of 75c, without then and there having any authority to make such sale; contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state."

Each of the counts was signed by the prosecuting attorney and at the conclusion of the sixth count

the indictment was indorsed, "A true bill" and was signed by the foreman of the grand jury.

Defendant was in the restaurant business in Fulton. The state introduced as a witness Prince Walker, a negro, who testified that in the evening of November 24, 1909, Sam Saunders, a white man, asked him to get him a pint of whiskey and gave him seventy-five cents. Witness went into defendant's restaurant, bought the whiskey of defendant, paid him for it and afterward, gave it to Saunders who stood outside. On cross-examination the witness admitted he had served a sentence in the penitentiary for manslaughter. Saunders also was called as a witness by the state and corroborated, in part, the testimony of the negro. Record evidence was introduced of all the proceedings relating to the adoption of the Local Option Law in the city of Fulton. There was no objection to this evidence and on its face it showed that Fulton was an incorporated city containing over 2500 inhabitants and that the provisions of the Local Option Law were regularly adopted and made applicable to that city on August 26, 1907, and were in force at the time of the alleged offense. No evidence was offered by defendant attacking the proceedings in any way. Defendant offered evidence to impeach the credibility of the witness Walker, but none that tended to affect the credibility of the witness Saunders. One witness introduced by defendant testified to facts tending to prove an *alibi* for defendant. The evidence of the state was sufficient to sustain a verdict of guilty and we pass to the consideration of the points urged by defendant against the indictment.

The first point, that the record fails to show the indictment was filed and presentment thereof made by the foreman of the grand jury in court and in the presence of the grand jury as required by section 5092, Rev. Stat. 1909, is ruled against defendant. The record before us as to this point does not differ essen-

tially from that approved by the Supreme Court in State v. Bell, 159 Mo. 479.

Next, it is urged that "the law on which said indictment was predicated was unknown at the time the offense was charged to have been committed, if any, and likewise at the time of the finding of the indictment." The law alleged to have been violated is given in the indictment as "the act of the Legislature of the State of Missouri, approved April 5, 1887, now article 3 of chapter 22 of the Revised Statutes of the State of Missouri for the year 1899, known as the Local Option Law."

The Local Option Law was enacted in 1887, as alleged, and has been included in every revision of the statutes since that time including the revision of 1909. The section applicable to cities of 2500 or more inhabitants has not been amended and appears in the statutes of 1899 as section 3028, article 3, chapter 22, and in the statutes of 1909 as section 7239. The omission of the indictment to refer to the latest revision of the statutes cannot be regarded as a' failure to charge defendant with the commission of an offense against a known law. The printed Session Acts and prior revisions of the statutes are still official and authentic repositories of the statutory law and reference to them in the description of a statute still in force is a sufficient pleading.

Further defendant contends that the indictment is bad because it fails to allege that the city of Fulton was an incorporated city, that it had a population of 2500 or more inhabitants at the time of the adoption of the Local Option Law; that the law was in force within the limits of the city; that it was in force therein as the law of the state and that there was a publication of a notice of the result of the election adopting the law. In State v. Searcy, 39 Mo. App. 393, it is said:

''We hold that it is sufficient in such a case, for the indictment to allege that the act of the Legislature, approved April 5, 1887, known as the Local Option Law has been duly adopted and was in force as the law of the state within the territory within which the offense is laid, at the date of the alleged offense, without reciting in detail the *manner* in which it was so adopted, which is merely the pleading of evidence.  So much of the indictment in the present case as went beyond this may, therefore, be rejected as surplusage; and the fact that it erroneously states the date of the act of the Legislature as April 5, 1888, instead of April 5, 1887, is of no importance, since there is but one act by that title and the clerical error is one which corrects itself.''

In State v. Dugan, 110 Mo. 1. c. 143, the Supreme Court say that an indictment is sufficient if it alleges that the act of the Legislature, approved April 5, 1887, known as the Local Option Law has been adopted and was in force in the city in which the offense is alleged to have been committed at the date of the offense ''without reciting in detail the manner in which it was adopted.''

This rule has not been changed in any later decision of the Supreme Court and its application to the present indictment compels us to rule against defendant on all of the points just stated.  An indictment even for a misdemeanor must charge a specific offense and must leave nothing to inference, but rules of construction are not so rigidly applied in misdemeanor as in felony cases ( State v. Wainright, 154 Mo. App. 653), and a fair and reasonable interpretation of the indictment in hand induces us to say that it contains a specific and clear charge of a violation of the section of the Local Option Law relating to cities of 2500 or more inhabitants.  It says that the law was duly adopted in the city of Fulton; that it was in full force and effect in said city when the offense

was committed and that the offense occurred "at the said city of Fulton." The information contained in this charge is clear, certain and definite and affords room for but one conclusion, viz., that defendant is accused of selling a pint of whiskey in the city of Fulton in violation of the Local Option Law which had been adopted in the city—not in the county outside of the city—and was in force at the time of the sale. It was no more essential to allege that the city had 2500 or more inhabitants than to allege all the details of the election and other proceedings pertaining to the adoption of the law. There was no possibility of the charge being misunderstood to the injury of the accused and, after all, that is the supreme test in the interpretation of any pleading in either a civil or a criminal case.

Finally the indictment is attacked on the ground that it was indorsed "a true bill" and signed by the foreman of the grand jury at the end of all the counts and not at the conclusion of each count.

Section 5093, Rev. Stat. 1909, provides: "Every indictment must be signed by the prosecuting attorney, and when the grand jury return any indictment into court the judge must examine it, and if the foreman has neglected to indorse it 'a true bill' with his name signed thereto, or if the prosecuting attorney has not signed it, the court must cause the foreman to indorse or the prosecuting attorney to sign it, as the case may require, in the presence of the jury." Speaking of this statute the Supreme Court say in State v. Bruce, 77 Mo. l. c. 195:

"No paper can be regarded as an indictment without the signature of the prosecuting attorney, and the certificate of the foreman of the grand jury that it is a true bill. Both are required and neither is a mere formality that may be dispensed with."

But this does not mean that the indorsement and signature of the foreman must appear at the end of

each count. The statute does not say so but requires only that the indictment which may contain one or a dozen counts shall be so indorsed and signed. There was a literal compliance with the law.

This disposes of the attacks on the indictment. We shall discuss only one of the other errors assigned and argued in the brief of defendant. It appears that defendant applied for a change of venue on the ground of the prejudice of the judge of the circuit court of Callaway county and supported his application by affidavits. Similar applications made by defendants in other criminal cases were pending and were heard at the same time that of defendant was heard. All of them were sustained but in the presence of the jurors the judge delivered a long and circumstantial address in open court on the subject of the prevalence of the practice of attorneys in criminal cases to use the law relating to change of venue in an improper and immoral manner. In substance the remarks amounted to a severe criticism of defendant and his attorneys and an accusation that they had laid a false and perjured charge of prejudice against the judge for the mere purpose of delay. A statement was made to the effect that this purpose and its attempted accomplishment had been anticipated and would be frustrated by the calling in of the judge of another circuit who was present and would proceed at once with the trial of the cases. As soon as the case was called by the special judge, defendant filed a motion to quash the panel of jurors on the ground that the minds of the jurors had been poisoned against him by the remarks delivered by the regular judge in sustaining his application for a change of venue.

The members of the panel were interrogated under oath and each stated that he had heard the address but had not been influenced thereby to the prejudice of defendant but could and would fairly and impartially perform the duties of juror if placed on the

jury to try the cause. The court overruled the motion and defendant afterward was compelled to go to trial before a jury selected from the regular panel.

That the evil practice thus so severely condemned is sometimes followed and often results in unnecessary delays in the dispatch of cases and is an abuse of a just rule of procedure is a fact of common knowledge. The criticism of the regular judge was truthful but it should not have been delivered in the presence of jurors who were to try defendant. For aught to the contrary appearing in the record, defendant made his application in good faith and for an honest purpose, and he was made the scape goat for the sins of others and loaded with the obloquy of an evil practice. It will not do to say the jury were uninfluenced by what they heard because they thought they were free of prejudice and could give defendant a fair trial. The question is whether the remarks of the court were such as to prejudice defendant in the minds of ordinary men in the situation of the jury, not whether or not this particular group of men believed they were not influenced against the object of the criticism. Men often are deluded into believing they are in a fair frame of mind when they are blinded by prejudice.

Defendant was entitled to a trial by a jury that had not been urged to hostility against him by the judge of the court on whose words one would expect them to place the greatest reliance. The extremely harsh sentence imposed in the verdict for a single offense, unsupported by evidence of aggravating circumstances and chiefly resting on the testimony of a witness of doubtful credibility, indicates the frame of mind the jury were in when they returned that verdict. Defendant did not have a fair trial and it follows that the judgment must be reversed and the cause remanded.

All concur.