STATE of Missouri, Plaintiff-Respondent,

v.

Arley R. TASH, Defendant-Appellant.

No. KCD 27354.

Missouri Court of Appeals, Kansas City District.

Oct. 6, 1975.

Ralph E. Baird, Joplin, for defendant-appellant.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

DIXON, Judge.

Defendant was convicted by a jury of stealing a dog. The jury failed to assess the punishment, and the trial court sentenced the defendant to two years.

Judgment and conviction are affirmed.

Defendant has raised twenty-seven points in his brief filed in this appeal. They are extremely repetitive and can be collected under twelve general headings for the purpose of review.

## I.

Since one of the categories of error claimed by the defendant is the sufficiency of the evidence to sustain the conviction, it will be necessary to state the facts which the jury could have found upon the evidence upon the basis of considering the evidence in the light most favorable to the verdict and evidence and inferences to the contrary being disregarded. *State v. Jackson,* 519 S.W.2d 551 (Mo.App.1975).

On June 22, 1975, defendant, his father and his brother inquired about coon dogs for sale at four households near Nevada, Missouri. One dog was purchased outright from a man named Pryor, and another dog was purchased on a trial basis and later returned. At the time the Pryor dog was purchased, the Tashes viewed and attempted to purchase another Pryor dog. Pryor refused to sell this dog. At the time of this visit to the Nevada area, the three Tashes

also visited the Wilson and Deahl farms, ostensibly to view dogs and attempt purchases. On the weekend before July 4, 1972, Pryor and Wilson each discovered a valuable dog was missing, the Pryor dog being the one he had refused to sell. Acting on information they obtained while searching for the missing dogs, Larry Wilson and his father traveled to Sesser, Illinois. Arriving the morning of July 8, 1972, they went to the home of Art Loman, a dealer in dogs of the kind that were missing, where they observed a red Ford automobile bearing Kansas license plates similar to the one the Tashes were seen driving in the Nevada area. The Tashes were residents of the Baxter Springs, Kansas area. The Wilsons contacted a police officer who drove to the Loman home and went to the door. At the time this policeman went to the door, he observed someone run from the rear of the house. Mr. Loman, the Wilsons, and the policeman went to the rear of the home where Loman kept his dogs and discovered that two dogs were missing. Loman testified that when he answered the door, all three of the Tashes were in his house, having arrived there the night before, gone hunting with him and remained overnight. They had disappeared from the Loman home during the time Loman was answering the door. These facts were broadcast over the police radio and a search for the Tashes was begun. Later that morning, the defendant Tash and his brother were taken into custody by a State Trooper when they emerged from a nearby cornfield. Larry Wilson and his father, together with assistance from the police officers, continued to search for the missing dogs. They discovered footprints in the cornfield leading into the cornfield and evidence of dog tracks and marks in the soil which indicated something had been dragged over the soil going into the field, and the footprints returning from the field without the dog tracks. The dogs were found sometime in the early afternoon, the Pryor dog being tied to a tree with some baling wire and the Wilson dog being found in an injured condition in a ditch. The Wilson dog had a large gash on his head and injury to his eye. Loman testified that the Tashes had attempted to sell these dogs to him. When apprehended, the defendant made a statement to Larry Wilson that he would pay $400 rather than be prosecuted for the theft of the dog. Trooper Biggs, when he questioned the defendant and his brother upon their emerging from the cornfield, asserts that the defendant and his brother said that they had been hiding in the cornfield.

■ These facts, and the inferences favorable to the verdict, are sufficient to support the conviction of the defendant for the stealing of the Wilson dog which was the charge laid against this defendant.

II.

■ Defendant complains of the denial of motions for continuance filed on January 24, the day of trial, and on January 16. No citation of authority is contained under this point of defendant's brief; nor is there any claim that the shortness of time between the appearance of trial counsel on the 16th and the trial on the 24th prevented the obtaining of any evidence material to the defendant's defense. The information had been on file for one and one-half years. There had been four prior continuances, and the defendant had only been in jail for a period of four days during the entire year and a half, so that he was not disabled from vigorously pursuing his defense during that time. The decision to grant or refuse the continuance was within the discretion of the trial court and will not be interfered with on appeal unless there is a clear abuse of discretion. *State v. Collie,* 503 S.W.2d 445 (Mo.App.1973); *State v. Lee,* 492 S.W.2d 28 (Mo.App.1973). Further, a defendant must demonstrate that the denial of the continuance prejudiced his case. *State v. Jefferies,* 504 S.W.2d 6 (Mo.1974). Under these circumstances, there is no abuse of the trial court's discretion, and no error appears.

## III.

Defendant claims that the trial court abused his discretion in overruling the motion for a continuance or the addition of persons to the venire because the panel contained persons who served as jurors in a companion case involving the defendant's brother. Again, no citation of authority is contained under this point except the due process and right to a jury portion of the Constitution and Rule 26.02. All those jurors who had served in the preceding trial were excused, and the State claims that all persons not on the jury, but who had heard testimony in the preceding case were excused. It is clear that defense counsel identified all those persons who admitted any prior knowledge of the facts, but the record does not disclose that he requested that any of these persons be excused for cause, nor is there any indication that defendant's counsel was required to use any of his peremptory challenges to remove jurors who had prior knowledge about the case. In fact, *voir dire* demonstrates that of those persons who had not been jurors in the prior cases, those who heard something about or had some knowledge about the case proclaimed an ability to try the case fairly despite such prior knowledge, and none admitted that such prior knowledge would prejudice them. Again, the issue of the excusing of a juror who has not admitted some prejudice or opinion with respect to the case is subject to the discretion of the trial court. *State v. Spica,* 389 S.W.2d 35 (Mo.1965); Cert. denied 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966); *State v. Cuckovich,* 485 S.W.2d 16 (Mo.banc 1972). If the defendant's assertion is that the court abused his discretion, his failure to challenge for cause constitutes a waiver of any such claim. *State v. Ivy,* 192 S.W. 737 (Mo.1917).

## IV.

Defendant next raises as a claim of error the evidence which was offered about the theft of the Pryor dog on the grounds that it was evidence of another crime and inadmissible. There was evidence in this record that the Pryor and Wilson farms were close by. The evidence also demonstrated that the dogs disappeared from both households on the same day. The dogs were found together and had been in the recent possession of the Tashes. The State's contention is that this evidence is admissible under the common scheme or plan exception to the inadmissibility of such evidence in ordinary circumstances. Relying upon *State v. Smith,* 431 S.W.2d 74 (Mo.1968), and *State v. Mitchell,* 491 S.W.2d 292 (Mo.banc 1973), the State insists that the evidence in this case falls within the exception of common scheme or design. Examining all the facts and circumstances in this case and considering the entire record, it would seem that the State's contention is correct and that this case is one in which evidence of the theft of the other dog becomes admissible to show common scheme and design. The cases cited by the defendant, typified by *State v. Mathis,* 375 S.W.2d 196 (Mo.1964), can be distinguished by the absence of any facts in those cases which tended to connect or interrelate the offenses themselves rather than the defendant's connection with the offense. As noted above, there are a variety of facts here which tend to show a connection between the offenses and to demonstrate that the offenses were, in fact, part of a common scheme or design. The further elaboration of this point by defendant's assertion that the prosecutor improperly argued this evidence fails upon a finding that it was properly admitted in evidence.

## V.

Defendant's next assignment is that it was error to permit testimony of the flight of an unidentified person or persons from the Loman home because such evidence was not connected with the defendant and could not establish an inference of

guilt. This assignment simply lacks the necessary factual basis to support it. Loman testified that when he went to the door to answer the police officer's knock, the three Tashes were in the house. Almost simultaneously, the officer observed someone running from the house, and upon entering the house, no one was present in the home except Mrs. Loman. A car identified at least as one similar to that used by the defendant was parked in the Loman driveway, and the defendant was apprehended after he had hidden in the cornfield. These facts clearly show flight and concealment of the defendant, and the evidence was admissible oh the authority of *State v. Simmons,* 494 S.W.2d 302 (Mo. 1973), and *State v. Barry,* 501 S.W.2d 515 (Mo.App.1973). Again, the issue of the use of this evidence on argument is attacked, but must also fail on a ruling that the evidence was properly admitted.

## VI.

■ An assignment of error is posed that the testimony of the Illinois State Trooper that he had a message over the police radio that subjects had fled from the Loman house was improperly admitted on the ground that such testimony was hearsay. From the record, it is clear that the testimony was not offered to prove the truth of the matter stated, but that it was used to explain how and why Trooper Biggs became involved in the case and took the Tash brothers into custody. Admission of testimony offered for that purpose was not error. Analogous cases are *State v. McRoberts,* 485 S.W.2d 70 (Mo.1972), where testimony about a police radio report was admitted to show the basis of probable cause, and *Nash v. United States,* 405 F.2d 1047 (8th Cir. 1969), where testimony about a police radio report was admitted to explain why defendant's car was stopped.

■ The State contends that, in any case, the testimony of Trooper Biggs was merely cumulative and, therefore, harmless. When the facts testified to are already in evidence by competent testimony, it is not prejudicial error when those facts are admitted again even though erroneously. *Hood v. Heppler,* 503 S.W.2d 452 (Mo.App. 1973). *Harris v. Goggins,* 374 S.W.2d 6 (Mo.banc 1963). The local police officer had testified he saw someone run out of the back of the Loman house. That fact being in evidence, admission of the State policeman's statement is, at worst, harmless error.

## VII.

■ Defendants assigns error on another evidentiary ground, contending that it was prejudicial to permit Larry Wilson to testify that the defendant said he would pay Wilson $400 rather than go to jail because the statement was not an admission and was in violation of the Miranda rule. The first objection came when Larry Wilson testified. The State properly points out that this point is not properly preserved for appellate review because the evidence was admitted without objection when the local police officer testified, and defendant cross examined on that issue. *State v. Stevens,* 467 S.W.2d 10 (Mo.1971), cert. denied 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971). *State v. Hampton,* 509 S.W.2d 139, 142 (Mo. App.1974). Even if the defendant had not waived the objection, there is substantially no basis for the claim of error. An offer of compromise or restitution to avoid a criminal charge may be received in evidence, and an express admission of guilt is not required. *State v. Alexander,* 499 S.W.2d 439, 441 (Mo.1973). *State v. Christian,* 245 S.W.2d 895, 897 (Mo.1952).

■ The second part of defendant's claim of error, that the Miranda rule applies, is not correct. The statement was made voluntarily to Larry Wilson who was not a policeman, even though the defendant was in custody and a police officer was present. In such circumstances, no warning is required. *State v. Mitchell,* 491 S.W.2d 292 (Mo.banc 1973); *State v. Ayers,* 470 S.W.2d 534 (Mo.banc 1971).

## VIII.

Defendant also contends that it was error to permit the jury to view the Wilson dog because the issue of identity and ownership was not in question and because the display of the dog unduly prejudiced the jury. The State contends that the assignment of error is so lacking in detail that it preserved nothing for appellate review. It is impossible to determine from the brief filed why the defendant claims the display of the dog unduly prejudiced the jury. Even though stolen articles admitted in evidence have no probative value, which seems to be the thrust of the first part of the defendant's objection, their admission is not necessarily prejudicial error. *State v. Carson,* 286 S.W.2d 750 (Mo.1956).

## IX.

The defendant complains that the acts of the trial judge in interrogating the defendant and making some comment with respect to the defendant's testimony prejudiced the defendant. The exchange between the judge and the defendant complained of was as follows:

*"BY THE COURT:*

Q. Mr. Tash, with regard to the 1st, 2d, 3rd and 4th of July, your testimony is, as I understand it, that you were working there at the Walmart place selling firecrackers, fireworks?

A. Yes.

Q. Was the Walmart store open and doing business at that time?

A. Uh huh.

Q. Are you aware that Missouri has a blue law and the Walmart stores are not open on Sunday?

A. You mean the store? I thought you were talking about the stand.

Q. I asked you if the store was open?

A. I don't remember whether the store was open or not. We were down in the far corner.

Q. Are you allowed to sell fireworks on Sunday?

A. Yes, as far as I know.

MR. BAIRD: The testimony was that the stand was out on the parking lot.

THE COURT: I understood him to say the store was open, but that is all right, go ahead. That is all the questions I have."

There is error only if the conduct of the trial judge so prejudiced the jury as to deprive the defendant of a fair and impartial trial. *State v. Hill,* 518 S.W.2d 682, 685 (Mo.App.1975). Whether there was prejudice depends on the context and words in each case.

The question of prejudice from comments or questions by a judge usually arises in one of three contexts. First, a judge may comment so directly or obviously as to indicate his opinion that a defendant is guilty, or that a witness is honest or dishonest, thereby depriving defendant of a fair and impartial trial. *State v. Jones,* 197 S.W. 156 (Mo.1917); *State v. Hyde,* 234 Mo. 200, 136 S.W. 316 (1911); *State v. Castino,* 264 S.W.2d 372, 375 (Mo.1954). A judge may question a witness to develop truth more fully or clarify some matter. This is proper if the questioning reveals no prejudice on the part of the judge. *State v. Grant,* 394 S.W.2d 285 (Mo.1965). Third, the judge may discipline or correct a lawyer or witness in a non-prejudicial manner. *State v. Ross,* 371 S.W.2d 224, 228 (Mo. 1963); *State v. Brotherton,* 266 S.W.2d 712 (Mo.1954). In these contexts, whether there was prejudice depends on the presence or absence of several elements distillable from the authorities.

The trial judge must not convey to the jury an attitude of hostility or bias against the defendant. *State v. Hill,* supra, and *State v. Jones,* supra. Nor may he pursue truth in the manner of a prosecutor. *State v. Drew,* 213 S.W. 106, 107 (Mo.1919); *State v. James,* 321 S.W.2d 698, 704–705 (Mo.1959). Protracted examination can be

prejudicial because it might indicate the judge's opinion on the facts or credibility of a witness. *State v. James,* supra.

In cases where there is some indication of prejudice, the trial judge might purge his conduct of the prejudice when the record shows his conduct was not unwarranted, as in *State v. Hill,* supra, and *State v. Moore,* 303 S.W.2d 60, 67 (Mo.banc 1957), or superfluous because the issue of a defendant's guilt is resolved without question, as in *State v. Montgomery,* 223 S.W.2d 463, 469 (Mo.1949). Another purging element is for the trial judge to instruct or admonish the jury that his conduct is not to be taken as a reflection on the defendant's guilt or innocence or a witness' credibility. *State v. Castino,* supra, and *State v. Hudson,* 358 Mo. 424, 215 S.W.2d 441 (Mo.1948).

In this case, there is no apparent bias or hostility on the part of the judge evident in other parts of the record. He questioned the defendant only briefly. It is unlikely the jury deduced from the brief questioning any opinion the judge might have held.

At the close of the questioning, defendant's attorney pointed out that the Walmart firecracker stand where defendant said he was working on Sunday was in the parking lot, not in the store.

Judged by the standards set forth above, it does not appear that the judge commented so directly and obviously as to deprive the defendant of a fair and impartial trial; nor does the question itself indicate any prejudice. Taken in its full context and on the record presented, no error appears.

## X.

Defendant levels a series of attacks on the instructions, complaining of error in those given and failure to give requested instructions. The five points under which these claims are made list not a single case in support. Additionally, with one exception, none of the challenged instructions is set forth in direct violation of Rule 84.04(e). *State v. Mesmer,* 501 S.W.2d 192 (Mo.App. 1973); *State v. Orr,* 493 S.W.2d 374 (Mo. App.1973). These violations of the rules are sufficient to dispose of the points on a procedural basis; however, some brief mention of the claimed issues and the resolution of them will be indulged in since it appears other cases may be pending arising out of the same factual setting.

The defendant complains of the giving of instruction No. 6. The attack upon instruction No. 6 is that there was no competent evidence that defendant acted with others to steal the Wilson dog and that it improperly submits the issue of acting in concert with others since the information does not charge the offense in that fashion. Instruction No. 6 as set forth in the transcript is a verdict directing instruction on stealing in conventional form but requiring that the jury find that defendant acted in concert with others.

On the first ground asserted, that there is no evidence of the defendant having acted in concert with others, the earlier recitation of the facts the jury could have found demonstrates the frivolity of the argument. There is again a sufficient circumstantial basis for the jury to infer the intent of the defendant to engage in a common scheme or plan to steal the Wilson and Pryor dogs.

On the second issue raised as to this instruction, a complete answer is found in *State v. Lemon,* 504 S.W.2d 676, 682, 683 (Mo.App.1973), where this court, dealing with a similar contention, pointed out that Section 556.170 RSMo 1969, completely abolished the distinctions between principals and accessories before the fact, citing *State v. Spica,* 389 S.W.2d 35, 40 (Mo.1965) and *State v. Lunsford,* 331 S.W.2d 538 (Mo. 1960). The *Lemon* opinion then holds that an indictment charging the crime directly and evidence of acting in concert with others, together with a submission on that theory does not create a variance constituting prejudicial error.

Instruction 3A which is set forth in the brief is a verbatim copy of MAI–CR 2.10 and was appropriate under the same analysis and authority as has been made as to instruction No. 6.

There is not a scintilla of authority or argument supporting defendant's claim that a converse instruction should have been given or that "the court erred in giving erroneous instructions which were not requested by the defendant." These last mentioned complaints raise no issues for determination.

## XI.

■ Defendant also complains that there was no evidence to show that the value of the dog exceeded $50. There was some evidence of value, the owner having testified that two offers of $500 for the dog had been made and refused. The defendant claims that this evidence was incompetent without any specification of authority. The defendant's objection at trial was as vague as the assignment here, the entire objection being, "I object to that." Regardless of this claim, that the evidence was inadmissible, which cannot be ruled on this record, Section 560.161 RSMo 1969 makes the stealing of a dog a felony regardless of value, and any failure of proof in that regard is harmless error, the finding of value being surplusage in any event.

## XII.

■ Defendant's final complaint is that the court erred in the use of a presentence report without first permitting the defendant access to the portions relied on by the court. The defendant does not mention Section 549.285 RSMo 1969 which denies access to such reports except at the discretion of the court. The defendant's argument is cast in terms of an "abuse of discretion." The difficulty is that, although the court ordered presentence investigation in January, 1974, and it was completed and filed in February, and defendant and counsel appeared in April for sentencing, no

request for any portion of the report was ever made so far as the record reflects. Defendant also complains of the basis upon which the probation officer recommended that probation not be granted, but that issue is not here for review in view of the failure to request the report and make a record on the issues, if any, which defendant now seeks to raise.

The judgment and conviction are affirmed.

All concur.